Next case will be United States v. Fontaine. Michael Fitzsimmons Good morning to the court. Will you be reserving any time for rebuttal? Yes, your honor. Seven minutes, please. Seven minutes? Okay, as granted. My name is Michael Fitzsimmons. I'm the court-appointed counsel for the appellant, Richie Fontaine. And I'm here this morning to argue that, in part, that 2253A of the Virgin Islands Code, which has to do with illegal firearms possession, fails constitutionally because it fails to define imitation firearm, which is what the government relied upon in achieving Mr. Fontaine's conviction. Are you saying that the government charged that he brandished an imitation firearm? They didn't charge that it was a real one? It was charged that it was a real one, but when it came to sentencing, and I did not do the trial, but I did only the sentencing portion, at that time, because the government had not recovered any firearm whatsoever, they sort of went to the default position, well, if we don't have the real firearm, then it must have been an imitation firearm, which falls under the badly written statute. Can I ask you a quick question here, Mr. Fitzsimmons? Yes, Judge. Would you agree, the government says in its answering brief, that when a defendant's vagueness challenge does not implicate First Amendment rights, it must be examined in light of the facts of the case at hand? In other words, it has to be dealt with as an as-applied challenge. Do you agree that that's an accurate statement, that we're required to look at this as an as-applied challenge? Your Honor, I struggle with that, but I don't know how else the court can, if a court is faced with a facially defective statute, the only way that I can get in here to talk about it is through the context of this case. Right. So we are talking about an as-applied, and if we're talking about an as-applied challenge, isn't your example of an orange or a neon green water pistol simply inapposite? Because the testimony here is that, and the only testimony is that, this shirt of the two victims looked like a real gun. It was a black pistol. It looked like a real black pistol. The victims did say that, and as the court knows, we're not contesting the robbery conviction. There's no argument to this court that those victims were not put in fear. Sure, but because this is an as-applied challenge, doesn't your argument have to be that if somebody has an absolutely dead-on ringer looking like a real pistol, that this statute doesn't put somebody on notice, that using that to commit a robbery is against the law? My argument is that the statute does not give fair notice to a person of reasonable intelligence. That could be, in this case, Mr. Fontaine, or it could be anyone else in the world. So that I'm clear on this. Your argument is that using the words imitation thereof does not tell a person of reasonable intelligence that if I use a real Saturday night special or one that looks exactly like it, but isn't, I'm still going to be in trouble the same way. The wording of the statute doesn't tell a person that. The problem with the statute is not that imitation firearm is badly defined. The problem is that it's not defined at all. And so I think the amount of time that the United States, I, and the district court spent multiple times in multiple briefings discussing the meaning of this, I think that's sort of prima facie evidence that there is a problem with normal understanding. We assume that the United States attorney and a court-appointed counsel and a district judge are people of ordinary intelligence. But we couldn't figure it out in the long discussions and briefing papers that we filed. Your position here is really a two-fold one. You acknowledge that, or do you acknowledge that there's reasonable notice that if you put people in fear of bodily harm or robbery, whatever, with an imitation firearm, that they can be sentenced for that offense. But your position, as I understand the briefing, is that the aggravated sentence of an imitation firearm has never been proved by the government and can't be proved. That's what I took from your briefing. That's correct, Your Honor. All right, so you don't really, just to back up what Judge Jordan said, you don't deny that the statute gave the defendant reasonable notice that his specific conduct was unlawful. I think he had reasonable notice that his specific conduct was unlawful for the purposes of the robbery. And I think this is what the confusion has always been, is that the government brief seems to say, well, he committed the robbery and they testified, there was testimony about a gun used in the robbery. Therefore, that must be the imitation firearm. And it just doesn't logically follow. Well, the government's position is, number one, there's a robbery that he's going to be sentenced for. Absolutely. And secondly, he should have a kicker sentence for doing so with a firearm which looked like a real firearm but really they never proved it was a real one. And their default position is it was an imitation firearm. Correct. And that's because the Virgin Islands statute talks about three different kinds of firearms. There's firearm, this is in 451D. They talk about a firearm which is our usual understanding of something that fires a projectile. They go on to include in that definition of firearm a modified or adopted firearm, which is something like a BB gun or an air pistol that was converted to be a real firearm. They mention but do not define in the sentencing Hansen statute imitation firearm. But because this is a criminal statute, the rule of lenity should apply for the benefit of Mr. Fontaine and others. If they're going to make a criminal statute and make you theoretically responsible for the plastic water pistol, if I walk out of here with that in my pocket and I commit a larceny, then I have now become eligible for a 15-year enhancement perhaps. So that they can't do. And the remedy is not difficult in this, Judge. We don't have to reverse lots of law. We just have to send this case to the Virgin Islands legislature and let them correct it. They should do, for instance, what do you... Well, we can't send this case. We might be able to tell them that the statute is in our... I misspoke, Your Honor. From a diplomatic standpoint. But we're going to deal with this case right here in this courtroom. I understand, Your Honor. I misspoke. I know you don't send it to them, but... Just to make ourselves clear, if I might see here or not, let me... Your position is that the statute gave you reasonable notice, a fine reasonable notice, that he can't hold up someone with an imitation firearm, that he's guilty of that, but that the enhanced sentence for doing so with an imitation firearm, because of the way the statute is drafted, it's virtually impossible for the government to prove the case because there's no licensing for an imitation firearm, and there's no way to prove that if you had one, you were unauthorized to have it. Yes, Your Honor, and that's my Daniel argument, which perhaps I'll mention on the rebuttal.  It seems like you're in the sort of heart of your argument. Do you want a lot of time, maybe two minutes, to further arguing now? How about three minutes, Judge? Okay. Can we do that? Great. Okay. So there's four left of it. Yeah. I think that what the Virgin Islands Legislature might have done was to craft a statute, for instance, I looked for analogies, and the United States has a statute dealing with imitation drugs. People can be convicted of dealing or trafficking in imitation drugs, even though they might not be cocaine or crack or whatever, they can actually be prosecuted and jailed for that illegal activity. But in that statute, the government defines very precisely what those imitation drugs or those, I believe they call them, controlled substance analogs. Imitation, since it's not defined, it's just given its ordinary meaning, right? That's the statutory rule of construction we need to follow, isn't it? That's one of the main rules of statutory construction. Yes, Judge. Well, let me, because I'm actually a little confused. I want to make sure I understand this. I understood you to be making, and maybe I got it wrong, two arguments in your briefing. First, an ordinary person would not know what was not being put on notice that doing the sort of thing that Mr. Fontaine did here was going to be illegal. But I hear you kind of backing off that today at the podium under Judge Cowen's question. I want to be clear. If you're backing off of that position, well and good, and we won't even bother with it further. But if you're still adhering to it, I need to know that. Second, I understand the position to be the one Judge Cowen is also questioning you on, which is you can't, even if somebody knew what you were talking about when you said imitation gun, it can't work here. The statute just flat out is unworkable because it still has to be unauthorized use, and there's no such thing as unauthorized use of an imitation gun. So you can never be convicted of it. I understood that to be your two arguments. Am I right or am I wrong? And if I'm wrong, help me out. You are correct, Your Honor, in both cases. Those are my two arguments. All right. And if that's your argument, as elucidated with the argument, since it is impossible for the government to prove that a person is unauthorized to possess an imitation firearm, should the court follow the statutory instruction avoiding an absurd result and saying that proof that he didn't have a licensed firearm is sufficient? But we avoid the absurd result then of saying the statute is informatic because it doesn't hold water. I understand your question, Your Honor, and you don't want to read an absurd result into the statute. But we've got dueling absurd results because a 17-year-old who takes the plastic water pistol to a party and commits a petty larceny, which is a crime of violence under Virgin Islands law, is now eligible for this enhancement. And that, I think, would be absurd. That individual could be sentenced to robbery but not be enhanced due to the requirement. He doesn't even have to use it. Under this statute, no one even has to see it. This is why the government's argument is a little bit confusing. They always go back to the fact that the victims were put in fear by seeing or feeling this firearm. But under the enhancing statute, the victim never has to see it. It has nothing to do with the victim's perception. Haven't you wandered away from your as-applied challenge now? I mean, the 17-year-old with the water pistol in his pocket is a far cry from the actual facts that we have to deal with here in an as-applied challenge, which is a real-looking black pistol held to a man's head. Well, I think that I would refer the Court respectfully to what Justice Scalia said recently in dissent, and he said that this is the kind of statute that permits, indeed invites, arbitrary enforcement. Probably there will be no enforcement against the 17-year-old who committed the petty larceny, but where is the constitutional restraint on that? That's going to be a purely discretionary decision by some policeman or prosecutor. We have to limit these prosecutions by defining the statute correctly or by defining it at all. There's no definition for the imitation firearm. Thank you, counsel. Counsel, we'll hear you one at a time. Thank you, Your Honor. You may proceed. Good morning, Your Honors. My name is Nelson Jones. I represent the I.P.L.E., the United States of America, in this particular matter. The government submits that the statute, Title 14, Virgin Islands Code, Section 2253, is not unconstitutionally vague. Did you think that Daniel was not worth a mention in your briefing? I think – I won't say it's not worth mentioning. What I would say is that it's distinguishable from this particular matter in two instances. That is, in Daniel, the government tried to put 2256 and bootstrap 2253 as the basis for the unauthorized possession of the ammunition. Plus, in Daniel, there was no penalty provision under 2256 for the ammunition charge. That's not what we have here. What we have here in 2253 is a statute that does provide a penalty provision for the possession of the imitation firearm. Plus, we're not trying to bootstrap it to any other statute. We're sticking strictly with Title 14, Virgin Islands Code, Section 2253. You've got to reconcile your position with the United States v. Xavier, which addressed the double jeopardy challenge in the same statute. It held that the statute criminalizes unauthorized possession and provides a sentence enhancement. Now, in order to enhance his sentence for the robbery, you've got to prove, under this statute, that he was unauthorized to have an imitation firearm. There's no proof in this record that he was unauthorized to have an imitation firearm. I'm not faulting you. The reason is because it's impossible to prove it. So, that being so, why shouldn't I conclude that you can enhance his robbery conviction with the kicker of doing a robbery with a firearm, whether it's an imitation or real? I think the issue, the problem is, if you look at the statute itself, under Title 14, Virgin Islands Code, 2253A, it says, whoever, unless authorized by law, has possessed, dispatched, transported, openly or concealed any firearm, and it doesn't talk about imitation firearm in that part of the statute. That part of the statute that deals with imitation firearm doesn't speak about unless unauthorized by law. It comes in the second portion of the statute, except that if such person shall have been convicted of a felony in any state, territory, or federal court in the U.S., or if such firearm or imitation thereof was had possessed, and goes on further. It doesn't talk about unauthorized possession in that provision. The provision concerning unauthorized possession is what the first part was talking about, openly or concealed any firearm. If this legislature intended that the gentleman would have to prove that the imitation thereof also required the unauthorized possession of the firearm, it would have included the imitation thereof language in the first portion of the statute, which it didn't. Your argument is exactly contrary to what was held in Xavier. Xavier had said that in that statute you had approved the unauthorized, you were unauthorized to have a firearm. Now, Xavier did not deal with an imitation, but I've read the statute like 20 times. I would show you that. And I would submit to you that I'm not a PhD in grammar. There's no way that Xavier was incorrect. You can't read that without saying that whether it's an operable firearm or an imitation one, you have to prove that the possession of it was unauthorized. That's what Xavier stands for. It does not. With that respect, the government did prove that the defendant was not licensed to possess a firearm, period, in any place in the territory. But that doesn't prove he's not unlicensed to have an imitation firearm, does it? There are two separate provisions, an operable firearm and an imitation one. Correct. But you proved, the record is clear, that he was not authorized to have an operable, you know, a working firearm. Where in the record did you prove he was unauthorized to have an imitation one? There's nowhere in the record, obviously as the court has indicated, that you can prove that somebody is unauthorized to possess an imitation of a firearm. There's nowhere in the record there. What the government has proven is that he was not authorized to possess a firearm, period. We can't enhance a sentence for something that wasn't proven, sir. The sentence was enhanced because he had an inoperable firearm. Why shouldn't that sentence be vacated based on the fact that you never proved it? I'm not faulting you. I understand that. I hope you can prove it. The fault here is in the way the legislation was drafted. I agree with that, John. I submit to the court that the fact that you're using the firearm for purposes of a robbery, the imitation firearm, I should say, for purposes of a robbery, which is what triggers the enhancement that is used in a crime of violence, we submit that that is the basis for the enhancement. There would be no enhancement but for the fact that there is a crime of violence that has occurred, that is the robbery. But isn't the problem that you are effectively having us remove the without authorization language? That's the way you'd like us to read this, right? That's correct. And that's the position you have to take because as the questioning you've gotten so far indicates, and I think you can see, it's impossible to show unauthorized use of an imitation firearm because there's no such thing as authorized use of an imitation firearm, right? That's correct. Okay. So then I guess the question really comes down to do you have authority for the proposition that we should read the statute as you suggest we should, even though it means, perhaps, excising the words without authorization? I think the authority is from statutory construction. That is, if you read, you must give the statute or you must read the statute in a way that it makes sense and is not superfluous or that one section is not superfluous to the other section. So how far can we go, Mr. Jones, before we start becoming the Virgin Islands legislature? In essence, the government submits that the court is not changing the law. What the court is doing is clarifying exactly what's in the law, that is, what the provision 2253 has determined to be unlawful and what the government must prove in order to meet the burden of proof with respect to 2253. I'm not asking the court to take the place of the Virgin Islands legislature, although in some instances that might be preferable. But the bottom line is that we're not asking the court to take the place of the legislature. What we're saying is, is that if you read the statute as a whole and you take the unauthorized possession portion, where it is versus where the imitation firearm, imitation thereof provision is, we submit to the court that the statute on its face is a constitutional statute. In the first instance, although unlawfully drafted, it is constitutional. But secondly, that Mr. Fontaine or the appellant earned the enhancement. Let's go back to my ninth grade graph here, because that's what we're talking about. Let's say if a person is convicted of possession of a probable firearm, not an imitation one, and it's done during the crime of violence, the same thing as we have here, would the government have to prove that the possession of that firearm in order to get the enhancement was unauthorized? Yes. All right. If your answer to that is yes, what is the grammatic reason for treating an inoperable firearm differently? Because… Under this statute, under the wording of this statute, you say you enhance the guy's conviction. It can only be done under the statute as written. Correct. What is the difference grammatically? How can you justify doing it grammatically under the kicker of this statute? Because in the first portion of the statute, it speaks concerning the unauthorized possession of the firearm itself. The kicker comes in with respect to the crime of violence. In response to your question, where you have the imitation thereof, as you indicated beforehand, you cannot prove, the government would never be in a position to prove that the person is unauthorized to possess an imitation thereof. And therefore, to make, to give the statute meaning and the common sense meaning, it would have to be, and the literal meaning would have to be, that for purposes of a firearm, you have to prove that it's unauthorized. But for purposes of the imitation thereof… But you're reading out of the statute the requirement that the possession be unauthorized. You've read that out of the statute? And that's in the statute? It is in the statute, in the first part of the statute. Yeah, but that statute, that statute controls whether the firearm is operable or an imitation thereof. The statute… I'm forgetting the grammar, not the logic now. Grammatically, how does that statute require that for an operable firearm, the possession be proved to be unauthorized, but for an inoperable, an imitation one, that you don't have to prove that it's unauthorized? We're grammatically looking at the statute. How do you justify your position? The only way I can justify the position, if at all… Is to say it doesn't make sense. Exactly. It only makes sense the way you're saying it. Exactly. Can you speak, if you would, to the argument that Mr. Fitzsimmons made last, which is the way this statute is written, it's just so vague that people don't know what's going to be prosecuted or not. So it's unconstitutional because a kid who is carrying a water pistol in his pocket never even shows it to anybody, and then commits some offense, is suddenly going to be subject to a 15-year penalty for carrying an imitation weapon. With respect to Attorney Fitzsimmons' last argument, Dennis admits that there is no confusion with respect to the statute. The statute is clear. Again, if the statute were clear, we wouldn't be here. We're here because it isn't clear. Because there's a problem with it. And the argument that you need to speak to is, it only says imitation firearm. It doesn't define imitation. A water pistol is an imitation firearm. Even if it's translucent and neon green and has a little water reservoir on it, it makes it clearly obvious it's a water pistol. And it's never brandished. It's just the possession of it. Therefore, it's totally up to the prosecutorial discretion of somebody in the V.I. Attorney General's office to decide whether or not to bang Junior with a 15-year penalty enhancement here. And that can't be right. That's the pitch they're making. Why is it wrong? It's wrong because in looking at the definition of imitation, it's something similar in likeness or appearance. A neon water pistol, green, purple, whatever color you want to make it, is not similar in likeness or appearance to a real firearm. And in this particular case, you have the testimony of both victims that testified that there was a gun placed to the victim Martinez's head, that Mr. Fontaine counted to three and told him, if he gets to three and he had not turned over the money, he would kill him. And, in fact, Mr. Martinez's conduct at that time was, as Mr. Fontaine counted one, two, when he got to three, he turned his head because he feared he was going to be shot in his face. You're saying if the statute has applied in this case, there's no problem about notice. That's correct. If there are no further questions, Your Honor, that concludes my presentation. Thank you, Counsel. Thank you, Your Honor. Counsel, since we sort of agree here, and I think we agree, I'm not sure we do, but we haven't conferenced it, that it's impossible for the government to prove that an inoperable firearm was unauthorized. Should we follow the rule of statutory construction and avoid the absurd result of requiring proof of the unauthorized inoperable firearm? That's a classic rule of statutory construction. We want to avoid an absurd result here. Judge Cohen, I don't think that it has to be absurd. There could be such things as authorized imitation firearms. There is none in the DI. That's right, and that's part of our problem. And I think it goes to Judge Jordan's question earlier about what we're doing here and how far we can go with the VI legislature. What the government is asking this Court to do is to, and Mr. Jones said the verb, he wants you to clarify the Virgin Islands Code section that we're dealing with here, and that is I would refer the Court respectfully to Justice Scalia in dissent in Sykes v. United States 131, Supreme Court 267, which was 2001. And he says, and I'm quoting, it is not the job of this Court to impose a clarity which the text itself does not honestly contain. If the Court, if this Court vacates these convictions under this non-definitional statute, it's a simple matter for the VI legislature to either clarify what they mean by an imitation firearm or they can remove the portion of the statute that's giving us so much trouble, which is unless otherwise authorized by law. If they want to excise that phrase, then this problem wouldn't be here. But the district court was... How do we, what is wrong with acknowledging that the VI legislature could not have intended an impossibility? They couldn't have meant to say, prove that the imitation is unauthorized because everybody knows there's no such thing as authorized possession of an imitation. So giving the reading of the statute a sensible construction leads to the result that without authorization only applies to firearms, not to imitations. What's wrong with following that line of reasoning? How does that take us away from the law? Well, I'm not quite sure I understand the Court's question there, but I believe you could say that it's... You wouldn't be alone, I'm sure. But it's basically Judge Cowan's repeated, which is, hey, there's this rule of statutory construction which says don't read a statute to lead you someplace that's ridiculous. And here the Virgin Islands legislature couldn't have meant unauthorized possession of an imitation weapon because that would be ridiculous. I guess what I would say, Judge Jordan, is that you are... The Court and all of us, the district court and the government and I, are all, and including this Court, are at a disadvantage because we're not really trying to do statutory construction. It's the absence of a definition here that we're really dealing with. So it's not like you're trying to interpret the definition that they gave you. They never gave you a definition. I don't see the difference between this and Daniel. Everything that this Court said in Daniel seems to apply here. And the district court was worried about it. At the appendix, page 326, early on, Judge Gomez expressed his reservations about the Daniel concern. And it says, and this Court has said at page 208 of that opinion, unless otherwise authorized by law, which is the phrase we're talking about, means possession without a license. It goes on in the same page to say, then, the United States must prove two things, possession of the imitation firearm, which they didn't do, and or even if they did that, through the testimony of the witnesses, the lack of authorization to possess. That's what they didn't do. This ---- You're going to have to wrap it up, but I had a question. Didn't your client, though, have fair notice that brandishing a firearm, whether it was functional or not, was a violation of Virgin Islands law? I would say he had a fair notice as a violation of Virgin Islands law. I don't think he knew that it made him eligible for an automatic 15 years enhancement. He ---- let's concede that he knew robbery was the wrong ---- was a crime. And he was using this object in ---- But in the Davis attack, doesn't it go to fair notice? And didn't your ---- I mean, your client, didn't he have fair notice that brandishing what he was holding? Well, Your Honor ---- Would that be a problem? I'm not a criminal ---- He wasn't holding that water pistol. He was holding a gun. Functional or not. Well, we don't know what he was holding, but he was holding something other than the orange plastic water pistol, presumably. Your Honor, I am not a criminal defense attorney, but I have been practicing law for 12 years, and I did not know that ---- I knew robbery was wrong and a crime and had harsh sentences attached to it, but I didn't know that you could conceivably spend an additional 15 years for having a fake pistol that no one ever saw. Okay. Thank you, counsel. Counsel. Thank you, Your Honor. Your Honor, are you handling this case pro bono? I'm appointed by the district court, Your Honor. Did you get it? Yes, Your Honor. All right. Thank you. Counsel, excellent job. You're going to make this case under advisement.